IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | : |
| | :    **CRIMINAL NO.: 23-cr-215** |
| v. | : |
| | :    **18 U.S.C. § 111(a)(1) and (b) (Assaulting,** |
| **DOUGLAS WYATT,** | :    **Resisting, or Impeding Certain Officers with a Deadly** |
| | :    **or Dangerous Weapon)** |
| Defendant. | : |

## STATEMENT OF OFFENSE

Pursuant to Federal Rule of Criminal Procedure 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, DOUGLAS WYATT, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured 24 hours a day by U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized people with appropriate identification are allowed access inside the U.S. Capitol.

2. On January 6, 2021, the exterior plaza of the U.S. Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States

1

Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside.

5. At approximately 2:00 p.m., certain individuals in the crowd forced their way through, up, and over the barricades, and officers of the U.S. Capitol Police, and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks by U.S. Capitol Police Officers or other authorized security officials.

6. At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd

encouraged and assisted those acts. The riot resulted in substantial damage to the U.S. Capitol, requiring the expenditure of more than $2.8 million dollars for repairs.

7.  Shortly thereafter, at approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 p.m. the same day. In light of the dangerous circumstances caused by the unlawful entry to the U.S. Capitol, including the danger posed by individuals who had entered the U.S. Capitol without any security screening or weapons check, Congressional proceedings could not resume until after every unauthorized occupant had left the U.S. Capitol, and the building had been confirmed secured. The proceedings resumed at approximately 8:00 p.m. after the building had been secured. Vice President Pence remained in the United States Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *WYATT's Participation in the January 6, 2021 Capitol Riot*

8.  On January 6, 2021, WYATT traveled from his residence in Fallston, Maryland to Washington, D.C. to attend the "Stop the Steal" rally and election-related events occurring on January 6, 2021. The purpose of WYATT's trip to Washington, D.C., was to protest Congress' certification of the Electoral College.

9.  On January 6, 2021, WYATT attended the rally in Washington, D.C. and later walked to the U.S. Capitol complex. WYATT was wearing a black and gray hat with yellow lettering, dark sunglasses, a black winter jacket, white (outside) and red (inside) gloves, gray backpack, blue jeans, white and gray tennis shoes, and, occasionally, a black face covering.

10. When WYATT arrived at the U.S. Capitol on January 6, 2021 at approximately 1:30 p.m., a large crowd had assembled on the restricted grounds surrounding the U.S. Capitol building. WYATT observed that the building was closed to the public and law enforcement officers were actively attempting to keep the crowd away from the building.

11. At approximately 2:10 p.m., WYATT was near the front of a line of rioters up against of police line of federal law enforcement officers wearing riot gear on the West Plaza near the inaugural stage. WYATT was standing in close proximity to his stepson, Jacob Michael Therres. At around 2:10 p.m., rioters began breaching the police line and engaging in physical altercations with officers. At this time, WYATT helped pull away a bicycle rack barrier from the police line during a struggle between police and rioters.

12. At around 2:14 p.m., Wyatt picked up a long, 4 x 4 wooden plank off the ground and handed it to Therres, who took the wooden plank and threw it at the police line.

13. Approximately 10 minutes later, WYATT took a chemical spray gun from a black bag on the inaugural stage area on the West plaza and began spraying law enforcement officers from the inaugural stage. The chemical substance sprayed by WYATT was an oleoresin capsicum (OC) aerosol with capsaicin concentration level of 0.2% to 1.3%.

### *Elements of the Offense*

14. DOUGLAS WYATT knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a)(1) and (b). Specifically, defendant admits that

- The defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties, and that he used a deadly or dangerous weapon in the commission of such acts. Specifically, the defendant admits that he sprayed several MPD

and Capitol Police officers with a chemical spray while those MPD officers were assisting the United States Capitol Police. The defendant further admits that he knew at that time of the assault of the officers that the officers were engaged in the performance of their official duties or that he assaulted the officers on account of their performance of their official duties.

        Respectfully submitted,

        MATTHEW M. GRAVES
        United States Attorney
        D.C. Bar No. 481052

By:   */s/ Ashley Akers*
       Ashley Akers
       Trial Attorney

## DEFENDANT'S ACKNOWLEDGMENT

I, DOUGLAS WYATT, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date:_____       _____
                                 DOUGLAS WYATT
                                 Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: _____      _____
                                 Norman A. Pattis
                                 Attorney for Defendant